UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 2:24-CR-0045-Z-BR-1 |
| | ) |
| COLE PATRICK UNDERWOOD, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |


ELECTRONICALLY-RECORDED REARRAIGNMENT HEARING
BEFORE THE HONORABLE LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE
OCTOBER 10, 2024
AMARILLO, TEXAS

FOR THE PLAINTIFF:

    CALANDRA WOOLAM
    UNITED STATES ATTORNEY'S OFFICE
    1205 Texas Avenue, Suite 700
    Lubbock, TX  79401
    (806) 472-7351


FOR THE DEFENDANT:

    BETHANY S. STEPHENS
    LAW OFFICE OF BETHANY S. STEPHENS
    P.O. BOX 75
    Childress, TX  79201
    (940) 937-4050


    Proceedings recorded electronically; transcript produced by computer-aided transcription.

_____

DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
Federal Official Court Reporter
1100 Commerce Street, 15th Floor
Dallas, TX  75242
(214) 753-2325

(Proceedings commenced at 9:15 AM.)

THE COURT:  The Court calls for Rearraignment *United States of America versus Cole Patrick Underwood*, Cause No. 2:24-CR-45-Z-BR-1.

MS. WOOLAM:  Your Honor, Callie Woolam on behalf of the United States; ready to proceed.

THE COURT:  All right.

MR. STEPHENS:  Bethany Stephens for the Defendant. We're present and ready.

THE COURT:  Okay.  Before proceeding further with the hearing, I do want to inquire of the Government's attorney as to whether the duty to notify victims of the hearing and their right to attend and be reasonably heard pursuant to 18 USC Section 3771 has been fulfilled.

MS. WOOLAM:  Yes, Your Honor, it has been.  There are several victims and guardians present in the courtroom, and my understanding is they do not elect to be heard today.

THE COURT:  All right.  Thank you for that.

And just to confirm:  If there are victims and guardians present in the courtroom, you do have the right to be heard at this hearing.  If you have changed your mind since you last talked to the Government's attorney and you do wish to be heard, would you please let the Court know that at this time before we go further with the hearing.

(Pause)

THE COURT: Okay. For purposes of the record, after making the announcement of the victim's right to be reasonably heard and asking any victims who wish to be heard to come forward, no one has raised their hand or approached the Court. And so the Court agrees with what the Government's attorney said; that although they are present, they do not wish to be heard, and we will proceed with the hearing.

All right. Could you raise your right hand for me, sir?

Do you solemnly swear that the testimony you give today will be the truth, the whole truth, and nothing but the truth, so help you God?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Go ahead and put your hand down for me.

EXAMINATION BY THE COURT:

Q. Are you "Cole Patrick Underwood"?

A. Yes, ma'am.

Q. Do you intend to plead "guilty" today to Count One of an Indictment that charges you with Enticement and Attempted Enticement of a Minor?

A. Yes, ma'am.

Q. Before I can recommend to our District Judge -- he's the other judge in our building -- that he accepts the plea of "guilty" that you intend to enter, I will have to ask you a lot

of questions.

A.   Okay.

Q.   There are two reasons that I have so many questions at a hearing like this one.

First, I have to make certain that you understood all of the rights you're giving up by pleading "guilty;" and then

Second, I will ask you a set of questions towards the end of the hearing to make certain that we do have facts in the case that will support the guilty plea.

Do you understand why I'll have so many questions?

A.   Yes, ma'am.

Q.   Some of those questions will be long.  So if for that reason or any other reason you think that what I have asked is confusing, will you feel comfortable telling me that?

A.   Absolutely.

Q.   All right.  Do you understand that you have the right to talk privately with your attorney at any point during the hearing?

A.   Yes, ma'am.

Q.   If you answer my questions then without telling me that I've asked something confusing or that you want to talk to your attorney, can I then assume that you did understand the questions you've answered?

A.   Yes, ma'am.

Q.   Do you understand that I placed you under oath at the

beginning of the hearing and if you were to answer any of these questions falsely, the Government could prosecute you for perjury or for making a false statement?

A.    Yes, ma'am.

Q.    All right.  I know I've said your name already but we are recording everything that happens in court.  For purposes of the recording, would you tell me your full name, sir?

A.    Cole Patrick Underwood.

Q.    Thank you.  How old are you?

A.    29.

Q.    How far did you go in school?

A.    I graduated from college with my Bachelor's degree.

Q.    Thank you.  In the last 12 months have you been treated for any kind of mental illness?

A.    No, ma'am.

Q.    In the last 12 months have you been treated for an addiction to any kind of narcotic drugs?

A.    No, ma'am.

Q.    Today are you under the influence of any drug, alcoholic beverage or medicine of any kind?

A.    No, ma'am.

Q.    While you have been at the Randall County Jail, have you been taking any type of medicine on a regular or a daily basis?

A.    No, ma'am.

Q.    One of the things that we will do during the hearing is to

talk about the different documents you signed to get ready to come to court. I know your attorney has those available on her laptop. If you want to look at anything during the hearing, she can pull it up, and that would be fine.

The document I want to talk with you about first is a one-page document. It has to do with your consent or your agreement to have me be the judge who hears the guilty plea. I know you have signed that, but for purposes of the record in your case, I need to give you an explanation about the purpose of the document. Then I'll have a couple of questions.

What the consent document does is explain that you do have a choice as far as which of the two judges in the building hears the guilty plea. You have the right to have our other judge, who is the District Judge, hear the guilty plea or you can agree to have me, as the United States Magistrate Judge, hear the plea this morning and then, when it is over, I'll make a recommendation to the District Judge that he either accepts or rejects the plea.

Before you signed the consent document, Mr. Underwood, did you have the chance to talk to your attorney about which of our judges would hear the guilty plea?

A. Yes, ma'am.

Q. All right. Do you have any questions today as far as which one of us hears the plea?

A. No, ma'am.

Q.    Is it okay with you then if we go forward with the hearing having me conduct it as the Magistrate Judge, knowing I'll make a recommendation at the end to the District Judge?

A.    Yes, ma'am.

THE COURT:  I find that the consent has been knowingly and voluntarily given, and we'll proceed forward.

Q    (By The Court) Have you previously been provided a copy of the Indictment in your case?

A.    Yes, ma'am.

Q.    Did you have a chance to read that document yourself?

A.    Yes, ma'am.

Q.    Did you also have a chance to talk to your attorney not only about the counts in the Indictment but to also talk with your attorney about everything related to your case?

A.    Yes, ma'am.

Q.    At this point then you have a choice that you can make.  We can have Count One of the Indictment read out loud, if you would like, or you can give up or waive the reading of it.

What do you prefer?

MR. STEPHENS:  Can we have a moment?

THE COURT:  Yes.

(Pause)

A.    We'll waive it.

Q    (By The Court) All right.  Even though the formal reading of the Indictment has been waived, there is still something else

that has to be read at this point.  That is what we call the "essential elements" of the offense that is charged by Count One. Those are the facts that would have to be proven during any jury trial with competent evidence and beyond a reasonable doubt before you could be found guilty.  The same elements that are about to be read were listed out in one of the documents in your case.  It's called your "Factual Resume."

After those elements are read, I'll ask if you understand the nature of the offense you intend to plead to.

MS. WOOLAM:  Yes, Your Honor.

There are four essential elements to the offense of Enticement and Attempted Enticement of a Minor:

First, that the Defendant knowingly persuaded, induced, enticed or coerced, or attempted to do so, an individual to engage in any sexual activity as charged in the Indictment;

Second, that the Defendant used the Internet, a cell phone or any facility or means of interstate or foreign commerce to do so;

Third, that the Defendant believed that such individual was less than 18 years of age; and

Fourth, that had the sexual activity actually occurred, the Defendant could be charged with the criminal offense of Section 21.11, Indecency with a Child, under the laws of Texas. That particular Texas offense has the following three elements:

First, that the Defendant is 17 years of age or older;

Second, that the Defendant knowingly or intentionally engaged in sexual contact with a child younger than 17 with the intent to arouse or gratify the sexual desire of any person, expose the person's anus or any part of the person's genitals, knowing that a child younger than 17 was present, or caused a child younger than 17 to expose the child's anus or any part of the child's genitals;

And third, this happened in Texas.

Q   (By The Court) Having heard the essential elements of the offense in Count One being read out loud, do you understand the nature of the offense you intend to plead to?

A.   Yes, ma'am.

Q.   Okay.

THE COURT:  Counsel, are you satisfied your client does understand the nature of the offense?

MR. STEPHENS:  Yes, Your Honor.

THE COURT:  I find that Mr. Underwood does understand the nature of the offense charged in Count One of the Indictment to which he intends to plead "guilty."

Q   (By The Court) Sir, are you fully satisfied with your attorney and the representation and advice you've received?

A.   Yes, ma'am.

Q.   All right.  At this point I need to talk with you about the Plea Agreements in your case.  Again, we could have those agreements read out loud, if you would like, or you could waive

the reading of the agreements.

What do you prefer?

A.   We can waive them.

Q.   All right.

THE COURT:  Counsel, do you join in that waiver?

MR. STEPHENS:  I do, Your Honor.

Q   (By The Court) At any time in the past, sir, did you have the chance to fully read both of those Plea Agreements?

A.   Yes, ma'am.

Q.   Did you also talk to your attorney about everything in the agreements?

A.   Yes, ma'am.

Q.   Do you understand all of the terms in these agreements between you and the Government?

A.   Yes, ma'am.

THE COURT:  Counsel, are you satisfied your client does understand his agreements?

MR. STEPHENS:  Yes, I am, Your Honor.

Q   (By The Court) Do you have any changes or corrections to make to your agreements, sir?

A.   No, ma'am.

THE COURT:  Counsel, would you have any to make?

MR. STEPHENS:  No, Your Honor.

THE COURT:  All right.

Q   (By The Court) Let me double-check the signature pages, and

I will have a question.

(Pause)

Q    (By The Court) It does appear that you have signed both of your Plea Agreements, Mr. Underwood.  Is that correct?

A.    That's correct.

THE COURT:  Did you sign as well, Ms. Stephens?

MR. STEPHENS:  Yes, Your Honor.

Q    (By The Court) These Plea Agreements we have just talked about do have different promises or agreements in them between you and the Government about various things in your case.  All of those promises and agreements are written down within the signed documents.  What I'm going to ask next relates to something a little bit different than that, though.

Are there any other agreements that are not written down within these plea documents but that you're still relying on in order to plead "guilty" today?

A.    No, ma'am.

Q.    Has anyone threatened you or attempted in any way to force you to plead "guilty" in the case?

A.    No, ma'am.

Q.    Are you pleading "guilty" voluntarily and of your own free will because you are guilty?

A.    Yes, ma'am.

Q.    By pleading "guilty" to a felony offense, if the District Judge accepts the plea, you then would be adjudged guilty.  A

judgment of guilt can deprive you of valuable rights that you have.  Another way to say that is to tell you that if you're found guilty, you may not be able to vote anymore, to serve on a jury, to hold public office, or to possess any kind of a firearm.

Do you understand?

A.   Yes, ma'am.

Q.   Do you understand also that under the Constitution and laws of the United States, you do have the right to plead "not guilty" and then you could go to trial in front of a jury on these charges in the Indictment?

A.   Yes, ma'am.

Q.   Are you aware that at any trial, as well as all the other parts of your case, you are entitled to have your attorney help you at each and every step?

A.   Yes, ma'am.

Q.   Do you understand that during any trial, you are presumed to be innocent, and it is the Government who has the burden to prove you guilty with competent evidence and beyond a reasonable doubt?

A.   Yes, ma'am.

Q.   During trial, the Government's witnesses would have to come into the courthouse.  They would testify in front of you.  That way you could see and hear what they were saying, and then your attorney could ask questions of those witnesses.

Do you understand?

A.   Yes, ma'am.

Q.    Additionally, at trial you would have the right to testify and present evidence in your own defense, if you wanted to do that voluntarily, but you could never be forced to testify against yourself.

Do you understand?

A.    Yes, ma'am.

Q.    Do you understand as well that if you decided not to testify or present any evidence at trial, those facts could not be used against you?

A.    Yes, ma'am.

Q.    Are you aware that your lawyer could issue legal documents that are called "subpoenas" that would require witnesses who were favorable to your side of the case to come into the courthouse and then those witnesses could testify for you?

A.    Yes, ma'am.

Q.    Do you understand that if you do plead "guilty" this morning and the District Judge accepts the plea, you will give up your right to have a trial in front of a jury as well as all those other rights I've described?

A.    Yes, ma'am.

Q.    Do you understand also that by pleading "guilty" today, you do give up your right not to testify against yourself?

And that is because I will ask questions during the hearing to establish that you are guilty, and you'll have to admit your guilt as part of the hearing.

A.    Yes, ma'am.

Q.    At this point, Mr. Underwood, I need to make certain you understand what the possible penalties and consequences are if there's a conviction on this offense in Count One.  These were all listed out within Paragraph 3 of the Plea Agreement you have signed.  However, the Government's attorney will read those out loud for us.  Once that's done, I'll ask if you understand.

MS. WOOLAM:  Yes, Your Honor.

The minimum and maximum penalties the Court can impose for this plea include the following:

Imprisonment for a period of not less than ten years, nor more than life;

A fine not to exceed $250,000 or twice any pecuniary gain to the Defendant or loss to the victims;

A term of supervised release of not less than five years, nor more than life, which is mandatory under the law and will follow any term of imprisonment.  If the Defendant violates the conditions of supervised release, the Defendant could be imprisoned for the entire term of supervised release;

A Mandatory Special Assessment of $100; and

Pursuant to Title 18, United States Code, Section 3014, an additional amount of $5000 if the Court finds the Defendant is not indigent;

Restitution to victims or to the community which is mandatory under the law and which the Defendant agrees may

include restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone;

Costs of incarceration and supervision; and

Forfeiture of property.

Q    (By The Court) Having heard all of those possible penalties and consequences being read out loud, do you understand each of those?

A.    Yes, ma'am.

Q.    As all of that was being read, there was a phrase that was used within the federal court system.  It is what we call "supervised release."  I want to explain a couple of things about that.

First, "supervised release" is a time period that would follow your release from any term of imprisonment you may receive in the case.  While you are on supervised release, you will have been given a set of terms and conditions by our District Judge that you have to follow.  In other words, he's going to give you a set of rules about what you can do and then what you can't do after you would be released from any possible prison sentence.

Second, if you violate any of those terms and conditions, you break the rules, your release can be revoked which means you can go back to prison without receiving credit for any of the time you already had spent out of prison and following the supervised release rules.

Do you understand that?

A.    Yes, ma'am.

Q.    All right.  Has anyone made a promise to you as to exactly what your sentence in this case will be?

A.    No, ma'am.

Q.    Do you understand it is the District Judge and only the District Judge who decides your sentence?

A.    Yes, ma'am.

Q.    In deciding the sentence for your case, the District Judge is required to consider what are called the *United States Sentencing Guidelines* as well as the punishment range that is within the *Guidelines*.  However, neither of those things is binding on him.

        Do you understand?

A.    Yes, ma'am.

Q.    Additionally, our laws require that any sentence the District Judge decides on for the case does six different things:

        Reflects the seriousness of the offense;

        Promotes respect for the law;

        Provides just punishment;

        Affords adequate deterrence;

        Protects the public; and then finally,

        Provides you with any needed educational or vocational training, medical care, or other correctional treatment.

        Do you understand?

A.    Yes, ma'am.

Q.   Have you and your attorney talked about how the *Sentencing Guidelines* might possibly apply to your case?

A.   Yes, ma'am.

Q.   It is those *Guidelines* you have talked about with her that provide.  The District Judge also takes into account some other factors as he is deciding a sentence.  Those are:

To consider the actual conduct you engaged in;

To see if there are any victims of the offense;

To determine the role that you played in the offense; and then

Whether you have accepted responsibility for your relevant conduct or have attempted to obstruct justice.

Do you understand?

A.   Yes, ma'am.

Q.   Are you aware that your criminal history is an important factor under the *Guidelines*?

A.   Yes, ma'am.

Q.   When you and your attorney talked about the *Guidelines* and how they might apply in the case, did she give you an opinion or an estimate as to what she thought the guideline range might be if you went to trial on both of these charges in the Indictment versus if you accepted this plea offer only to Count One?

A.   Yes, she did.

Q.   Okay.  Do you understand that when she gave you that opinion or estimate, that she can't promise that is correct even though

she does have a lot of experience with these *Sentencing Guidelines*?

A.    Yes, ma'am.

Q.    Are you aware that the reason that she can't make any promises about how the *Guidelines* may work out is because the District Judge will always have the ability to do something different with your sentence than what your attorney's opinion is?

A.    Yes, ma'am.

Q.    Neither the District Judge, nor your attorney will be able to determine exactly what that sentencing guideline range in your case will be until after a probation officer writes what is called the "Presentence Report."  Sometimes that is called the "PSR."  Once that report is written, both you and the Government will have a chance to review it and also to object to the facts that are in the report as well as to the recommended guideline range.

      Do you understand that process?

A.    Yes, ma'am.

Q.    Do you understand that no one, not even your lawyer, can predict ahead of time what your sentence will be?

A.    Yes, ma'am.

Q.    Do you understand that after it has been determined what the guideline range in the case is, the District Judge still will have the authority to decide on a sentence that is more severe

than what's called for under the *Guidelines*?

A.   Yes, ma'am.

Q.   Let me get something real quick.

Okay.  It is within Paragraph 14 of the Plea Agreement where you have given up your right to an appeal except for in the circumstances that were listed out in the agreement.

Do you understand that?

A.   Yes, ma'am.

Q.   Parole for this offense to which you intend to plead "guilty" has been eliminated.  So that means if you are sentenced to prison in the case, when you're released, it's not to parole.  Instead, you would be placed under the terms of supervised release.

Do you understand?

A.   Yes, ma'am.

Q.   Do you understand also that if the sentence our District Judge decides on in your case happens to be more severe than what you have expected, you are still bound by a plea of "guilty" today and you don't have the right to withdraw that plea?

A.   Yes, ma'am.

Q.   In just a moment I'm going to ask how you plead.  Before I ask that question, though, is there anything else you want to talk to your attorney about?

A.   No, ma'am.

Q.   Having ---

MR. STEPHENS:  Your Honor?

THE COURT:  Yes.

MR. STEPHENS:  Would you just go over the sex offender registration requirements before he pleads?

THE COURT:  Yes.

Q   (By The Court) All right.  This is on Page 11 of the Plea Agreement, and you have signed this as well.  I can see you're looking at a copy of this on your attorney's laptop.  Is that your signature there?

A.   Yes, ma'am.

Q.   Okay.  And so you have been advised that under the Sex Offender Registration and Notification Act, you will have to register and keep your registration current wherever you live, wherever you are employed, or wherever you are a student, and I suppose those could be in different jurisdictions if you were living somewhere on the border between two different states.

And you have a time period or a time limit on when you have to do that which is three business days after you make any change with respect to any of this.  So if you were to change where you lived, if you were to change where you were going to school, getting another degree, or where you were working, that three-business-day requirement would kick in.

And then if you intended to travel outside of the United States, you also are required to provide information about that.

And then finally, if you don't comply with your obligations under the Federal Sex Offender Registration Act, you could be prosecuted for that failure to register which could result in a fine or imprisonment or both.

Do you understand all of that?

A.    Yes, ma'am.

Q.    All right.  Having been informed of your rights and the possible consequences of pleading "guilty," how do you plead to Count One of the Indictment?

A.    Guilty.

Q.    All right.  Before I can recommend to the District Judge that he accepts the guilty plea you just entered, I do have to ask that second set of questions I mentioned at the very beginning which are the ones to make certain that we have facts in your case to support a guilty plea.

In that regard, we can have the Government's attorney read the Factual Resume in your case out loud, if you would like, or you also have the ability to waive the reading of that document.

What do you prefer?

A.    We can waive it, Your Honor.

Q.    All right.

THE COURT:  Counsel, do you join in the waiver?

MR. STEPHENS:  I do, Your Honor.

Q    (By The Court) At any time in the past, Mr. Underwood, did you have a chance to fully read your Factual Resume?

A.   Yes, ma'am.

Q.   Did you also have a chance to discuss that document with your attorney?

A.   Yes, ma'am.

Q.   Do you understand everything that is in the Factual Resume?

A.   Yes, ma'am.

Q.   Do you have any changes or corrections to make to it, sir?

A.   No, ma'am.

         THE COURT:  Counsel, would you have any to make?

         MR. STEPHENS:  No, Your Honor.

Q    (By The Court) I previously have looked at the signatures on this document.  It appears that you signed the resume as well. Is that correct?

A.   Yes, ma'am.

         THE COURT:  Did you sign, also, counsel?

         MR. STEPHENS:  Yes, I did, Your Honor.

Q    (By The Court) Do you admit under oath today, Mr. Underwood, that this Factual Resume in your case is true and correct in every respect?

A.   Yes, ma'am.

Q.   Do you also admit under oath that you committed each of the essential elements of the offense charged by Count One of this Indictment?

A.   Yes, ma'am.

         THE COURT:  Being satisfied with the responses that

have been given during the hearing, I make the following finding on the record:

In the case of the *United States of America versus Cole Patrick Underwood*, Cause No. 2:24-CR-45-Z-BR-1, I find that Mr. Underwood is fully competent and capable of entering an informed plea. His plea of "guilty" to Count One of the Indictment is a knowing and voluntary plea that is supported by an independent basis in fact that contains each of the essential elements of the offense charged by Count One of the Indictment.

The Court is recommending that his plea of "guilty" be accepted by our District Judge. And if it is, he then will be adjudged guilty of the offense charged by Count One of the Indictment.

Next, I want to explain three things as far as what you can expect will happen in the next days and weeks after this hearing is over.

The very first thing that will happen is I will sign a document today called "Report and Recommendation Concerning Guilty Plea." That report is how I communicate to the other judge, the District Judge, to tell him that we had a hearing where you pled "guilty" today and also that I'm recommending he accepts the plea. You will have 14 days after today to make any kind of objection that you would want to make to the fact I am recommending that he accepts the guilty plea.

The second thing that will happen is the District Judge

will enter his own Order that sets out the schedule for everything that happens after today in your case.  He might get it entered before the end of the week or there's a possibility he does not enter that until early next week.  Regardless, within that Scheduling Order, it will give you the date that sentencing takes place which will be in several months.  During sentencing, typically the judge will hear from you, your attorney, and then up to three witnesses on your behalf.  You also could have people write letters to him, if you would like, that talk about you.  Your attorney can help you coordinate that.  And as long as those kinds of letters are received on time, the judge will read all of those.

Finally, there will be a probation officer who writes that Presentence Report or PSR I mentioned in one of the questions.  That report is written in order to help the District Judge make a decision about what the appropriate sentence should be in your case.  For that reason then, it is important to you that you cooperate with all the aspects of that report.  You may be asked to have a meeting with the probation officer who is writing it to help get information for the report gathered.  If there is a meeting like that, your attorney can be there with you.

Another reason it is important for you to cooperate with that PSR is because the probation officer who writes it will have the ability to recommend a decrease in your offense level

for what is called "acceptance of responsibility."

And then finally the whole report that is being put together is what helps everyone to calculate the sentencing guideline range in your case.

I can't give you legal advice about anything in your case.  Obviously, that's the role of your attorney.

With that being said, though, do you have questions about anything we did in court?

THE DEFENDANT:  No, ma'am.

THE COURT:  Okay.  Were you able to understand everything I asked?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  That is everything for your case this morning, Mr. Underwood.  You'll be remanded to custody, and good luck as you go through the last part of your case, sir.

THE DEFENDANT:  Thank you.

MR. STEPHENS:  May I be excused, Your Honor?

THE COURT:  Yes, you may.  Thank you, Ms. Stephens.

MS. WOOLAM:  Thank you, Your Honor.  And may I be excused as well?

THE COURT:  Yes.  I hope both of you have safe travels back home.

MS. WOOLAM:  Thank you, Your Honor.

(Hearing adjourned at 9:54 AM.)

CERTIFICATE OF OFFICIAL REPORTER


I, Deborah A. Kriegshauser, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of Texas, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the electronically-recorded proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 20th day of March, 2025.


/s/ Deborah A. Kriegshauser
_____
DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER